*Supp. 3 Opinion
HAMRICK, Acting P. J.
The plaintiff appeals from a municipal court judgment holding that the defendant, a condominium owner who is a member of the homeowners association and who has accepted the covenants, conditions and restrictions pertaining to his condominium has no personal liability for his share of maintenance assessments levied by the association after he vacates his condominium.
Facts of the Case
On November 29, 1974, a declaration of covenants, conditions and restrictions (CC&Rs) of Cerro de Alcala was filed in the county recorder’s office for the County of San Diego. On or about February 2, 1982, respondent, Harry Burns, agreed to purchase a Cerro de Alcala condominium unit. According to the escrow instructions respondent agreed to become a member of the homeowners association and be bound by the CC&Rs. Respondent received and accepted a deed to the condominium unit and personally received and signed for the subject CC&Rs which expressly provide in part as follows: “. . .by acceptance of a deed for a unit herein . . . each owner will promptly pay in full all dues, fees and assessments . . . .”
After close of escrow respondent took possession of his condominium unit and remained in possession for five and one-half months. While respondent occupied his condominium, he paid to the homeowners association his share of assessments which were levied against his condominium unit. However, on August 4, 1982, respondent vacated his condominium unit after the holder of the first trust deed note, Home Federal Savings, notified respondent that it was enforcing the “due on sale clause” and would be commencing foreclosure proceedings. Respondent remained the record title owner of the condominium unit until November 10, 1983, when title was transferred pursuant to foreclosure by a trustee’s deed. Respondent did not pay any assessment fees levied against his condominium from August 1982, through November 1983, which amount, after certain credits, was stipulated to be $1,265.02.
The municipal court found that respondent was not personally liable for the assessments as he had ceased enjoying the benefits of the condominium when he vacated same.
Discussion
Civil Code section 1466 provides in part that “[n]o one, merely by reason of having acquired an estate subject to a covenant running with the *Supp. 4 land, is liable for a breach of the covenant . . . after he has parted with it or ceased to enjoy its benefits.”
It is undisputed that the maintenance assessments are in fact covenants running with the land as the CC&Rs include a provision that each homeowner was to pay his or her proportionate share of maintenance fees. The intent that the Cerro de Alcala covenants were to run with the land was expressly manifested in the deed through which Burns acquired title. Further, maintenance assessments “touch and concern the land” as the payments go directly to the maintenance of the grounds and the making of necessary repairs. Finally, the covenants specifically bound all successors without distinction as to how the property is acquired.
Respondent, however, asserts that because he “vacated” the premises in August 1982, after being advised of foreclosure proceedings, Civil Code section 1466 was triggered, releasing him of any further liability. Thus, the key issue is whether a vacating of the premises constitutes either a parting or ceasing of enjoyment of the property (as described in Civ. Code, § 1466).
We hold that it does not. Abandonment of a right or property is the voluntary relinquishment thereof by its owner with the intention of terminating his ownership, possession and control and without vesting ownership in another person. (Carden v. Carden (1959) 167 Cal.App.2d 202, 209 [334 P.2d 87].) In the present case, there simply is no showing of such intent. In order for an owner to abandon a unit in a community association so as to divest himself of the duty to pay assessments, the owner must give the association record notice of the abandonment through the recording of a quitclaim deed, notice of abandonment or other recorded instrument which makes it clear that the owner is relinquishing all of the rights of ownership. Thus, vacating of the premises (mere relinquishment of possession) does not release a homeowner of liability arising from maintenance assessments becoming due.
Although respondent ceased to enjoy the possession of his property, he continued to enjoy other aspects of ownership until the very moment of recordation of the trustee’s deed which effected a transfer of the property. As the record owner of the property, respondent continued to benefit from the homeowners association’s ongoing schedule of maintenance and repairs to the common areas. In addition, respondent benefited from the protection of a policy of general liability insurance maintained by the homeowners association. Also, at all times prior to the transfer of title, respondent was entitled to lease, encumber, assign, exchange or sell the property as well as *Supp. 5 reoccupy the unit at no expense. Thus, it is clear that respondent did not cease to enjoy the benefits of the estate by voluntarily vacating the premises.
It should be noted that Civil Code section 1356, which gives the homeowners association the right to collect assessments made in conformity with their CC&Rs specifically makes this obligation a “debt of the owner” at the time the assessment is made. Therefore, such obligation is personal in nature, even though it may also become a lien against the property under circumstances as provided in that code section.
Respondent’s final contention is that Code of Civil Procedure section 580b precludes a deficiency judgment after a sale of real property for failure of the purchaser to complete his contract of sale. This code section has no application to the instant case as this is not an action for deficiency pursuant to a default of a purchase price. Rather this is an action arising from an independent covenant. Unlike the first trust deed holder, the homeowners association is not a party to the sale transaction, nor is the association a lender of funds. In addition, a homeowners association does not have the ability to demand security from the buyer and the association must accept the buyer and cannot avoid the transaction. Therefore, the association is not a member of the class intended to be affected by the transactions covered by Code of Civil Procedure section 580b, nor are the protections afforded by Code of Civil Procedure section 580b intended to defeat the interest of the homeowners associations.
Based on the foregoing we hold that an owner of a condominium unit and a member of the homeowners association retains substantial benefits of ownership notwithstanding the relinquishment of physical possession of the condominium unit and may not avoid payment of maintenance assessments levied pursuant to CC&Rs accepted by the owner merely by physically removing himself from the property.
Accordingly, judgment of the lower court is reversed with instructions to enter judgment in favor of plaintiff/appellant, Cerro de Alcala Homeowners Association, in the stipulated amount of $1,865.02, less a $600 credit for a net amount of $1,265.02.
Kremer, J., and Duffy, J., concurred.